1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JESUS VALENZUALA,**<br><br>Petitioner,<br><br>v.<br><br>**MICHAEL L. BENOV, Administrator,**<br><br>Respondent. | **Case No. 1:13-cv-00480 LJO MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner raises two claims challenging a disciplinary hearing in which he suffered a loss of good time credit. First, he asserts that the Disciplinary Hearing Officer ("DHO"), an employee of a privately-run correctional institution, did not have authority to discipline him. Second, he asserts that his right to due process was violated when discipline was imposed by the DHO since the DHO was not an independent and impartial decision-maker. (Pet. at 3, ECF No. 1.)

Petitioner filed his petition on April 4, 2013.  Respondent filed an answer to the Petition on July 18, 2013. (Answer, ECF No. 13.) Petitioner filed a traverse to the answer on August 12, 2013. (Traverse, ECF No. 14.)

28

1

1

## I.      FACTUAL BACKGROUND

2      On November 18, 2010, Petitioner arrived at Taft Correctional Institution ("TCI") in

3  Taft, California, for service of a federal term of imprisonment.  TCI is a "federal facility

4  operated by a private company."[1] (Decl. of Jennifer Vickers (("Vickers Decl.")) ¶ 3,

5  Attach. 3.) On November 29, 2011, staff at TCI discovered Petitioner was attempting to

6  circumvent established mail procedures by mailing a letter to a third party for delivery to

7  an inmate confined at another facility. (Id. ¶ 4, Attach. 4.) An incident report was issued

8  and delivered to Petitioner that same day. On February 2, 2011, Petitioner appeared

9  before a Discipline Hearing Officer ("DHO"); the DHO was an employee of TCI. (Id.,

10  Attach. 5.) At the hearing, Petitioner stated he knew he could not send a letter directly to

11  another inmate, but believed it permissible to send it to his sister who would then forward

12  it. (Id.) The DHO found that Petitioner had committed a prohibited act and recommended

13  disallowance of 27 days good conduct time. Id. The DHO's report and findings were

14  reviewed by Bureau of Prisons ("BOP") staff, the findings were certified, and the

15  recommended sanctions were imposed. (Id. ¶ 5, Attach 7.) Petitioner challenges the

16  results of the hearing by claiming that the DHO was not authortized to impose sanctions

17  because regulations governing disciplinary hearings authorize only BOP staff to sanction

18  inmates.  He also claims that  the DHO was not impartial.

19  ## II.      STANDARD OF REVIEW

20      Writ of habeas corpus relief extends to a person in custody under the authority of

21  the United States. See 28 U.S.C. § 2241.  Writ of habeas corpus relief is available if a

22  federal prisoner can show he is "in custody in violation of the Constitution or laws or

23  treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner's claims are proper

24  under 28 U.S.C. § 2241 and not 28 U.S.C. § 2255 because they concern the manner,

25  location, or conditions of the execution of Petitioner's sentence and not the fact of

26

27      [1] See Minneci v. Pollard, 132 S. Ct. 617, 620 (2012). Taft Correctional Institution is a private prison
currently owned by Management and Training Corporation which contracts with the Bureau of Prisons to
28  house federal inmates.

1  Petitioner's conviction or sentence. Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir.1990)

2  (stating that a challenge to the execution of a sentence is "maintainable only in a petition

3  for habeas corpus filed pursuant to 28 U.S.C. § 2241"); Montano-Figueroa v. Crabtree,

4  162 F.3d 548, 549 (9th Cir. 1998).

5          Further, Petitioner is challenging the execution of his sentence at TCI in Taft,

6  California, which is within the Fresno Division of the Eastern District of California;

7  therefore, the Court has jurisdiction over this petition. See Brown v. United States, 610

8  F.2d 672, 677 (9th Cir. 1990).

9  **II.      REVIEW OF THE PETITION**

10         **A.      Exhaustion of Administrative Remedies**

11         "As a prudential matter, courts require that habeas petitioners exhaust all

12  available judicial and administrative remedies before seeking relief under § 2241." [2]

13  Ward v. Chavez, 678 F.3d 1042, 1045-1046 (9th Cir. 2012). The exhaustion requirement

14  in § 2241 cases is not required by statute nor a "jurisdictional" prerequisite. It is a

15  prudential limit on jurisdiction and can be waived "if pursuing those [administrative]

16  remedies would be futile." Id.; Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir.

17  2001), abrogated on other grounds, Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006);

18  Fraley v. U.S. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993).

19         Petitioner did appeal and exhaust his administrative remedies regarding the

20  disciplinary finding, but he did not challenge the issues raised in the instant petition.

21  Petitioner argues, however, that any administrative appeal would have been futile since

22  the outcome was based on a BOP policy. (Traverse at 3.) Indeed, a March 30, 2007,

23  BOP memorandum regarding inmate discipline at privately operated facilities authorizes

24  private prison employees to serve as DHOs and discipline inmates. (Decl. of Jennifer

25  Vickers ("Vickers Decl.") ¶ 5, ex. 6.) Similar challenges to the authority of employees of a

26  private prison have been denied through administrative appeals in reliance on the 2007

27  ───────────────

28          [2] By contrast, 28 U.S.C. § 2254, which governs habeas corpus petitions filed by petitioners in state custody, specifically requires that petitioners exhaust other avenues of relief. See 28 U.S.C. § 2254(b)(1).

1  memorandum. See e.g., Garcia v. Benov, E.D. Cal. Case No. 1:13-cv-00550-LJO-JLT,

2  ECF No. 13-1 at 40-42; Torres-Sainz v. Benov, E.D. Cal. Case No. 1:13-cv-00896-LJO-

3  SKO, ECF No. 14-1 at 32-36; Kasirem v. Benov, E.D. Cal. Case No. 1:13-cv-01026-LJO-

4  MJS, ECF No. 13-1 at 35-38, all pending in this Court.[3]   Thus, it is clear that any

5  appeals on this issue would be denied based on the BOP memorandum authorizing

6  private prisons to conduct disciplinary proceedings. Accordingly, exhaustion would be,

7  and is, futile. Ward v. Chavez, 678 F.3d at 1045-1046 (citing, as examples, Fraley, 1

8  F.3d at 925; Sours v. Chavez, No. 2:08-cv-01903-SRB, Dkt. No. 22, 2009 U.S. Dist.

9  LEXIS 76743 at *2 (D. Ariz. June 17, 2009)); see also McCarthy v. Madigan, 503 U.S.

10  140, 148 (1992), (superseded by statute) (Exhaustion not required where the

11  administrative body is shown to be biased or has otherwise predetermined the issue

12  before it.). In light of the futility of pursuing administrative remedies, the exhaustion

13  requirement is waived, and the Court shall review the merits of the petition.

14      **B.    Claim One – Lack of Authority of DHO**

15      Petitioner, in his first claim, asserts that the DHO lacked authority to discipline

16  Petitioner as the DHO was not an employee of the BOP as required by applicable

17  Federal Regulations. Petitioner relies on a recent unpublished Ninth Circuit case in

18  which a DHO at the same private correctional facility was found to lack authority under

19  the previous version of the regulation. See Arredondo-Virula v. Adler, 510 Fed. Appx.

20  581, 582 (9th Cir. 2013). The Ninth Circuit held:

21      [The DHO] was not an employee of the Bureau of Prisons (the
22      B.O.P.) or Federal Prison Industries, Inc.  as required by the applicable
        regulation in place at the time. 28 C.F.R § 541.10(b)(1) (2010). The
23      regulation provided: "only institution staff may take disciplinary action."
        Staff was defined as "any employee of the Bureau of Prisons or Federal
        Prison Industries, Inc." 28 C.F.R. § 500.1(b). We note that 28 C.F.R §
24      541.10(b)(1) is no longer in force.

25      [Respondent] concedes that [the DHO] was not an employee of the
        B.O.P. or Federal Prison Industries, Inc.  At oral argument, his counsel
26

27      [3] A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th
    Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Accordingly, the Court takes
28  judicial notice of documents filed in related habeas challenges.

4

suggested that [the DHO] was "an officer". He was not an officer of the B.O.P.

A significant difference exists between employees and independent contractors. Minneci v. Pollard, 132 S. Ct. 617, 623, 181 L. Ed. 2d 606 (2012) (federal inmates have no federal Bivens cause of action for damages against privately-run prison workers because these workers are not federal employees), see also Allied Chem. & Akali Workers of Amer., Local Union No. 1 v. Pittsburgh Plate Glass Co. et al., 404 U.S. 157, 167, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971). Under the plain meaning of the law, [the DHO] was not authorized to discipline [Petitioner].

Arredondo-Virula, 510 Fed. Appx. at 582.

### 1. Regulatory Framework for Disciplinary Proceedings

Congress has provided broad authority to the BOP for the "management and regulation of all Federal penal and correctional institutions" including providing suitable quarters and for the safekeeping, care, and subsistence of federal prisoners. See 18 U.S.C. § 4042(a). The BOP is also authorized to provide "discipline of all persons charged with or convicted of offenses against the United States." Id.

### a. Regulations Prior to June 20, 2011

Prior to June 20, 2011, the regulations promulgated by the BOP governing inmate discipline described the purpose of the regulation: "So that inmates may live in a safe and orderly environment, it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with Bureau of Prisons rules." 28 C.F.R. § 541.10(a). The regulation "appl[ied] to all persons committed to the care, custody, and control (direct or constructive) of the Bureau of Prisons." Id. Furthermore, the regulation explained that "[o]nly institution staff may take disciplinary action." 28 C.F.R. § 541.10(b). The definition section of the regulations stated that staff "means any employee of the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1.

Based on the former statutory language, the Ninth Circuit in Arredondo-Virula found that the DHO was not an employee of the BOP and did not have the authority to sanction the petitioner.

### b. Regulations Enacted on June 20, 2011

The regulations were amended in 2011. The BOP amended "its inmate discipline

and special housing unit ("SHU") regulations (28 CFR part 541, subpart A and subpart B) to streamline and clarify these regulations, eliminating unnecessary text and obsolete language, and removing internal agency procedures that need not be in regulations text." 75 Fed. Reg. 76263 (Dec. 8, 2010). The newly revised regulations allow "Bureau staff to impose sanctions on inmates who commit prohibited acts" to "help[] ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public."  28 C.F.R. § 541.1   The regulation "applies to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons." 28 C.F.R. § 541.2. The definition section of the regulations remained the same, explaining that staff "means any employee of the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1.

### 2.    Petitioner's Contentions

Petitioner contends that the regulations, as stated, only allow BOP staff to discipline inmates. Accordingly, Petitioner asserts that the DHO, an employee of Management and Training Corporation, was not an employee of the BOP and lacked the authority to sanction Petitioner. (See generally Pet. and Traverse, ECF Nos. 1, 14.)

### 3.    Respondent's Contentions

Respondent does not dispute, and therefore concedes, that TCI is a private prison and that the DHO who conducted the discipline hearing was not a BOP employee. However, Respondent presents three arguments in support of his claim that the sanctions were nevertheless  authorized.

First, Respondent argues that the conduct was authorized based on the language of 28 C.F.R. § 541.2 which provides that the discipline program applies to "inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons." Expanding on that argument, Respondent argues that "[b]y explicitly including contract facilities in the application of the discipline program, it is necessary that the definition of 'staff,' as the

1   term is used in Section 541 be expanded; otherwise, inmates in contract facilities would

2   never be subject to discipline." (Answer at 9.)

3       Second, Respondent relies on a BOP memorandum issued on March 30, 2007,

4   providing guidance in matters involving inmate discipline in privately operated facilities.

5   (Vickers Decl., ¶ 5, Attach 6.)  This memorandum requires that "[C]ontract staff at Taft…

6   will send all DHO decisions regarding the disallowance or forfeiture of GCT [good credit

7   time], along with the recommended sanctions, to the PMB[4] [privatization management

8   branch] DHO. The PMB DHO will review the entire discipline file and make an

9   independent decision regarding the contractor's recommendation." (Id.) Respondent

10  asserts that the procedure implemented by the memorandum comports with the

11  requirement of the regulation set forth in 28 C.F.R. § 541.1 which allows "Bureau staff" to

12  impose sanctions.

13      Finally, Respondent asserts that matters of inmate discipline at residential re-

14  entry centers are also subject to a procedure where private employees discipline

15  inmates subject to review by BOP staff, and that the procedure has withstood judicial

16  review.

### 4.   Legal Standard for Review and Application of Federal Regulations

17

18      To resolve the present claims of Petitioner, the Court must interpret the meaning

19  of the regulations and determine whether the BOP is bound by the regulations. The

20  standards for review and application of federal regulations are well established under

21  federal law.

22      With respect to interpretation of federal regulations, the agency's interpretation of

23  ambigious regulations is provided deference. Christopher v. SmithKline Beecham Corp.,

24  132 S. Ct. 2156, 2166 (2012). "It is well established that an agency's interpretation need

25  not be the only possible reading of a regulation--or even the best one--to prevail."

26

27  _____

28      [4] Although not defined by Respondent, it appears that the PMB is located at the central office of the BOP and serves to manage contract facilities which have agreements with the BOP.

7

Decker v. Northwest Envtl. Def. Ctr., 133 S. Ct. 1326, 1337 (2013). Under Auer v. Robbins and Seminole Rock, a court will defer to an agency's interpretation of its regulations, "even in a legal brief, unless the interpretation is plainly erroneous or inconsistent with the regulations or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." Talk Am., Inc. v. Mich. Bell Tel. Co., 131 S. Ct. 2254, 2260-2261 (2011) (citation omitted); Chase Bank USA, N. A. v. McCoy, 131 S. Ct. 871, 881 (2011); Auer v. Robbins, 519 U.S. 452, 461 (1997); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 411 (1945); Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels., 730 F.3d 1024, 2013 U.S. App. LEXIS 19255 (9th Cir. 2013). "This is generally called Seminole Rock or Auer deference." Decker, 133 S. Ct. at 1339 (Scalia, J., dissenting.) Justice Scalia summarized Auer deference as follows:

> In practice, Auer deference is Chevron deference applied to regulations rather than statutes. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The agency's interpretation will be accepted if, though not the fairest reading of the regulation, it is a plausible reading--within the scope of the ambiguity that the regulation contains.

Id. at 1339-1340.

With respect to the inquiry whether the interpretation does not reflect the agency's fair and considered judgment on the matter in question, "[i]ndicia of inadequate consideration include conflicts between the agency's current and previous interpretations; signs that the agency's interpretation amounts to no more than a convenient litigating position; or an appearance that the agency's interpretation is no more than a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." Price v. Stevedoring Servs. of Am., Inc., 697 F.3d 820, 830 n.4 (9th Cir. 2012) (en banc)) (citing Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 (1988) and Auer, 519 U.S. at 462).

Where a court declines to give an interpretation Auer deference, it accords the agency's "interpretation a measure of deference proportional to the 'thoroughness

evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" Christopher, 132 S. Ct. at 2169 (quoting United States v. Mead Corp., 533 U.S. 218, 228 (2001)); Indep. Training & Apprenticeship Program, 2013 U.S. App. LEXIS 19255 at *27. This amount of consideration will "vary with circumstances" and may be "near indifference," such as has been given in some cases when considering an "interpretation advanced for the first time in a litigation brief." Mead, 533 U.S. at 228 (citing Bowen, 488 U.S. at 212-13).

With respect to the application of federal regulations generally, the government is bound by the regulations it imposes on itself. United States v. 1996 Freightliner FLD Tractor, 634 F.3d 1113, 1116 (9th Cir. 2011); (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265 (1954)). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." Morton v. Ruiz, 415 U.S. 199, 235 (1974); Alcaraz v. INS, 384 F.3d 1150, 1162 (9th Cir. 2004).

Having chosen to promulgate a regulation, the agency must follow that regulation. Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 852 (9th Cir. 2003). The Ninth Circuit explained the rational for the Accardi principle:

> An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process. NLRB v. Welcome-American Fertilizer Co., 443 F.2d 19, 20 (9th Cir. 1971); see also United States v. Newell, 578 F.2d 827, 834 (9th Cir. 1978). Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." Vitarelli, 359 U.S. at 547 (Frankfurter, J., concurring); see also Note, Violations by Agencies of Their Own Regulations, 87 Harv. L. Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts).

Sameena Inc. v. United States Air Force, 147 F.3d 1148, 1153 (9th Cir. 1998).

**5.     Analysis**

9

1

a.      Interpretation of the Regulations

2        Petitioner argues that the regulations only allow BOP employees to discipline

3   inmates. See 28 C.F.R. §§ 500.1(b), 541.1.  The Court agrees. Section 541.1 allows

4   "Bureau staff to impose sanctions on inmates who commit prohibited acts." As defined

5   by section 500.1, "staff" is any employee of the Bureau of Prisons or Federal Prison

6   Industries, Inc." Accordingly, the plain language of the regulations state that only BOP

7   staff may discipline prisoners.

8        While the sections were recently revised, nothing in the new regulations can be

9   interpreted to change the meaning of the language regarding who has the right to

10  impose sanctions on inmates. There is no significant distinction between the language of

11  the previous regulation that "[o]nly institution staff may take disciplinary action" and the

12  present regulation which "allow[s] Bureau staff to impose sanctions." Neither regulation

13  purports to extend the authority to discipline or impose sanctions to anyone besides

14  BOP staff, and the modifications are consistent with the stated purpose of streamlining

15  or clarifying the regulations, rather than changing their substantive meaning. See 75

16  Fed. Reg. 76263 (Dec. 8, 2010). Respondent comments that the regulation was

17  amended, but does not argue that the phrase "allow[s] Bureau staff to impose sanctions"

18  has a different meaning "[o]nly institution staff may take disciplinary action."

19       Instead, Respondent argues that since § 541.2 states that the inmate discipline

20  regulations apply to private facilities that contract with the BOP,  it is "necessary that the

21  definition of 'staff' be expanded to apply to non-BOP employees." (See Answer at 8.

22  (citing 28 C.F.R. § 541.2 ("This program applies to… any prison, institution, or facility in

23  which persons are held in custody by direction of, or under an agreement with, the

24  Bureau of Prisons.")). It is clear from the regulations that the disciplinary procedures set

25  forth in § 541 apply to inmates at contact facilities, such as TCI. However, whether the

26  regulations are intended to apply to inmates held at contract facilities and whether

27  disciplinary sanctions can be issued by anyone but BOP staff are separate inquiries.

28       First, the former regulations apparently also indicated that the discipline process

was to apply to inmates at contract facilities. The former regulation "appl[ied] to all persons committed to the care, custody, and control (direct or constructive) of the Bureau of Prisons." See 28 C.F.R. § 541.10(a). While revised, the meaning of the former regulation and § 541.2 appear substantially similar. See 75 Fed. Reg. 76263 (Dec. 8, 2010) (The revisions were made to streamline and clarify the regulations.). Of greater importance, nothing in the language of § 541.2 either expressly or impliedly states that employees of non-BOP institutions can impose sanctions on inmates. To the extent that Respondent attempts to construe its meaning to allow non-BOP employees to discipline inmates, he has not reconciled that with the express language of of § 541.1 which expressly states "Bureau staff to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1.

Second, Respondent claims that if only BOP staff can sanction inmates, then inmates at private prisons would never be subject to discipline. (See Answer at 8.) Respondent cites to representative language to the effect  that the disciplinary process is initiated when "staff witness or reasonably believe that [an inmate] committed a prohibited act" and that "[a] staff member will issue [an inmate] an incident report." See 28 C.F.R. § 541.5.

While it might make disciplining inmates at contract facilities more difficult if under the regulations only "staff," defined as BOP employees, can discipline, nothing in the regulations prevent inmates at private facilities from being disciplined. Section 541.5 does not require BOP staff to witness the prohibited act. It is sufficient if they reasonably believe that a prohibited act was committed. Respondent has provided nothing to suggest a BOP staff person could not have a reasonable belief that a prohibited act had been committed based solely on a reliable account from non-BOP staff member employed by the contract facility if the latter either witnessed or investigated a prohibited act. Likewise, nothing in the regulations requires that BOP staff be physically present to conduct disciplinary hearings. Both regulations discussing hearings before the Unit Discipline Committee ("UDC") or before the DHO state that the inmate "may appear…

1    electronically (for example, by video or telephone conferencing)" at the UDC or DHO's

2    discretion. See 28 C.F.R. §§ 541.7(d)(1); 541.8(e)(1). Accordingly, it appears that

3    discipline of inmates at contract facilities could be conducted by BOP staff located

4    elsewhere. Respondent's contention (that limiting "staff" to BOP employees means that

5    inmates at contract facilities would not be subject to discipline) is without merit.

6          Moreover, the Court does not find Respondent's assertion that the express or

7    implied language of the regulations allows non-BOP staff to impose sanctions on

8    inmates. Respondent's election not to claim that the regulatory language is ambiguous

9    renders it inappropriate to invoke Auer deference to its interpretation. See Tibble v.

10   Edison Int'l, 711 F.3d 1061, 1072 n.8 (9th Cir. 2013) (ambiguity in the regulation needs

11   to be shown to invoke Auer deference.) (citing Gonzales v. Oregon, 546 U.S. 243, 255

12   (2006). Respondent presents no argument as to why staff should be defined in a

13   different manner than as expressly described in the regulations, or how the phrase

14   "allow[s] Bureau staff to impose sanctions" is ambiguous and open to interpretation.

15         Instead, Respondent argues that 28 C.F.R. § 541.2, which states that the

16   regulations apply to private facilities with an agreement with the BOP, authorizes non-

17   BOP staff to impose sanctions. Section 541.2 cannot be read in the abstract. The

18   chapter of the regulation governing inmate discipline must be viewed as a whole, and

19   the meaning of sections of the regulation are determined based on the context of the

20   entire chapter. See, e.g., Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S.

21   644, 666 (2007) ("It is a fundamental canon of statutory construction that the words of a

22   statute must be read in their context and with a view to their place in the overall statutory

23   scheme.") (citations omitted). Terms of the regulation should not be read in a manner

24   that would contradict or negate other terms of the regulation. See Decker v. Northwest

25   Envtl. Def. Ctr., 133 S. Ct. 1326, 1342-1343 (2013) (Scalia, J., dissenting.) (Applying the

26   interpretive presumption of validity - a "canon that we are to prefer the meaning that

27   preserves to the meaning that destroys.") (citing Panama Refining Co. v. Ryan, 293 U.S.

28   388, 439 (1935) (Cardozo, J., dissenting)). Based on cannons of construction, it is not

1   reasonable to interpret section 541.2 in a manner that would negate the plain meaning of

2   sections 500.1(b) and 541.1 which authorize only BOP staff to impose sanctions on

3   inmates. Accordingly, the Court finds that the regulations unambiguously require BOP

4   staff to impose sanctions.  No other meaning could be formed without straining the plain

5   meaning of the terms of the regulation.

6          Because the Court finds that the text of the regulation is not ambiguous and that

7   the interpretation Respondent advances in his briefs is inconsistent with the regulation,

8   the Court "does not grant deference to those views apart from their inherent ability to

9   persuade." Schwab v. Comm'r, 715 F.3d 1169, 1176 (9th Cir. 2013); Christopher, 132 S.

10  Ct. at 2169.

11                     b.     March 30, 2007 BOP Memorandum

12         Respondent's second argument relies on a BOP memorandum instructing the

13  private employee DHO at TCI to send a copy of the discipline decision to a BOP staff

14  member to review and certify the decision. (See Vickers Decl., ¶ 5, Attach 6.) The

15  memorandum instructs the following procedures be followed:

16             Effective, July 1, 2007, DHO actions involving disallowance or
           forfeiture of Good Conduct Time (GCT) for federal inmates housed at the
17             Taft and McRae facilities will be forwarded to BOP staff for certification
           prior to imposition of sanctions. PMB staff in the Central Office will serve
18             as the BOP's DHO for the purpose of reviewing and certifying DHO
           actions for Taft and McRae. GCT will not be taken without certification.
19

20  (Id.) Respondent asserts that certification process comports with the requirement set

21  forth in § 541.1 requiring "Bureau staff" to impose sanctions.

22         Unfortunately, the framework created by the memorandum is inconsistent with the

23  procedures set forth by the regulations. Section 541.8 sets forth the procedure required

24  for hearings before the DHO and the resulting decision and imposition of sanctions.

25  Under § 541.8, an inmate is allowed to appear before the DHO during the hearing in

26  person or electronically unless the DHO determines the inmate's presence would

27  jeopardize institution security or the inmate waives his right to appear or has escaped or

28  is otherwise absent from custody. 28 C.F.R. § 541.8(e). Inmates are entitled to make a

statement and present documentary evidence to the DHO, and the DHO will consider all evidence presented during the hearing and make a decision based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence. 28 C.F.R. § 541.8(f). Inmates can present witnesses to appear before the DHO either in person or electronically, or if the witness cannot appear, written statements of the witness can be considered during the DHO's hearing. Id.

If the DHO determines that the inmate committed a prohibited act, he or she can impose any of the available sanctions listed in § 541.3. 28 C.F.R. § 541.8(g). Finally, the DHO prepares a written report of the decision which must set forth whether the inmate was advised of his rights, the evidence relied on by the DHO, the DHO's decision and sanction to be imposed, and the reason for the sanction imposed. 28 C.F.R. § 541.8(h).

The regulation requires inmates to have an opportunity to appear and present evidence and witnesses to the DHO, who, upon weighing the evidence, decides if the inmate committed the prohibited act and imposes the appropriate sanctions. In drafting the regulations, it was clearly the intent of the BOP to designate the DHO as the person to issue sanctions against inmates.[5] See 70 Fed. Reg. 43093 (July 26, 2005).[6] The regulations therefore require the inmate to be able to appear before the DHO, who is required to be an employee of the BOP, and the DHO is to issue sanctions against the

---

[5] The BOP also authorizes the Unit Discipline Committee ("UDC") to issue sanctions not including loss of good conduct time for lesser violations.

[6] The changes to the regulations "alter the list of possible sanctions available to allow [DHO]s more flexibility in adapting the sanction to fit the seriousness of the violation." Id. The new regulations also allow the DHO to impose monetary sanctions for violations. "We made this change to provide DHOs with the flexibility to sanction inmates by imposing monetary fines as a punishment and deterrent to committing prohibited acts. Additionally, by providing another sanctioning option, DHOs are better able to tailor the discipline of individual inmates' in a manner best suited to affect behavioral changes. We also clarify that the sanctions of 'make monetary restitution' and 'monetary fine' *may only be imposed by DHOs*." 70 Fed. Reg. 43093, 43096 (emphasis added). Additionally, in noting that the new regulations increased the disciplinary segregation sanction available to DHOs the BOP commented, "DHOs will not in fact impose the maximum amount of disciplinary segregation in every case; only in the most egregious circumstances for the most serious offenses." Id. Finally, the BOP also changed "the rule to allow DHOs to impose sanctions that are also available at the UDC level, since such apparently lesser sanctions may likewise be useful in changing inmate behavior at the DHO level." Id. at 43097.
Based on the clear language of the comments to the proposed regulations, it is not possible to construe the intent of the BOP to allow anyone besides the UDC and DHO to sanction inmates.

1   inmate. The policy set forth by the memorandum does not follow the procedure set forth

2   in the regulations. It either allows a DHO, who is not a BOP employee, to sanction the

3   inmate if reviewed and certified by a BOP employee or it allows a BOP employee to

4   sanction an inmate without the inmate being allowed to present his arguments and

5   evidence directly to the BOP employee.

6          If the non-BOP employee at TCI is acting as the DHO and imposing sanctions,

7   the DHO would be complying with the procedures set forth in § 541.8 but would not be

8   authorized to impose those sanctions as he is not a BOP employee as required by §§

9   500.1(b) and 541.1. On the other hand, if the PMB staff member reviewing and certifying

10  the decision is considered the DHO and instituting disciplinary sanctions, he would be an

11  authorized BOP employee allowed to sanction inmates under §§ 500.1(b) and 541.1, but

12  the Petitioner would be deprived of his right to appear before the DHO and present

13  evidence and witnesses as required by § 541.8(g-h). Nothing in the regulations set forth

14  a certification process that would validate an otherwise unauthorized decision by

15  someone who is not an employee of the BOP. Moreover the BOP, in its memorandum,

16  makes no mention of the relevant regulations governing the disciplinary review process

17  or how the instituted polices would comply with the regulations.

18         Under Auer and Seminole Rock, this Court is required to defer to the BOP's

19  interpretation of its regulations, "unless the interpretation is plainly erroneous or

20  inconsistent with the regulations or there is any other reason to suspect that the

21  interpretation does not reflect the agency's fair and considered judgment on the matter in

22  question." Talk Am., Inc., 131 S. Ct. at 2260-2261. Respondent's interpretation based on

23  the procedure set forth in the memorandum is inconsistent with the plain meaning and

24  intent of the regulations regarding disciplinary procedures before a DHO. It is also

25  inconsistent with the comments of the BOP in enacting the regulations. See 70 Fed.

26  Reg. 43093. The regulations set forth who has the authority to sanction inmates and the

27  rights and procedures that inmates have before the DHO. As described above, either

28  alternative proposed by Respondent – that the definition of 'staff' should be enlarged to

1  cover private employees or that the PMB DHO was the actual DHO - poses problematic
2  interpretations of the relevant regulations.

3        Respondent's interpretation is not entitled to <u>Auer</u> deference. However, the Court
4  must still provide the "interpretation a measure of deference proportional to the
5  'thoroughness evident in its consideration, the validity of its reasoning, its consistency
6  with earlier and later pronouncements, and all those factors which give it power to
7  persuade.'" <u>Christopher</u>, 132 S. Ct. at 2169. The interpretation presented by Respondent
8  in the March 30, 2007, memorandum and its answer to the petition neither addresses,
9  nor reconciles, the inconsistencies between the active policy and the requirements of the
10  relevant regulations. Respondent's policy does not explain how it complies with the
11  requirements set forth in § 541, requiring only staff to sanction an inmate, and how the
12  DHO, whom the inmate has the right to appear personally before, is the party to sanction
13  the inmate. Likewise, Respondent in his briefing urges the Court to either expand the
14  definition of staff or consider the PMB DHO as the actual DHO, without presenting
15  persuasive arguments about how that is authorized by the regulations. Respondent's
16  claims that a contrary interpretation would be a hardship to the BOP, while possibly true,
17  provides little guidance to the Court in interpreting what the BOP is authorized by
18  regulation to do.

19        As <u>Auer</u> deference does not apply to Respondent's interpretation of the
20  regulations, the Court "must employ traditional tools of interpretation" in reviewing the
21  language of the governing statute and regulations to determine their meaning.
22  <u>Christopher</u>, 132 S. Ct. at 2170. Congress provided broad authority to the BOP to
23  manage correctional institutions and to provide discipline to inmates. <u>See</u> 18 U.S.C. §
24  4042(a). It is possible that the statutory grant of authority by Congress would allow the
25  BOP to delegating the authority to discipline inmates to private contractors. <u>See</u>
26  <u>Chevron, U.S.A., Inc.</u>, 467 U.S. at 844. Regardless, the statute is silent regarding any
27  delegation, and is of little assistance in interpreting the language of the regulations
28  promulgated by the BOP, which are more detailed and onerous than the statute. <u>See</u>

1  Alcaraz v. INS, 384 F.3d at 1162.

2  The regulations clearly define the definition of staff: "Staff means any employee of

3  the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1(b). Under

4  rules of statutory construction, "we must follow that definition, even if it varies from that

5  term's ordinary meaning." Stenberg v. Carhart, 530 U.S. 914, 942 (2000). The regulation

6  states what the term staff means, and "[a]s a rule, 'a definition which declares what a

7  term "means" . . . excludes any meaning that is not stated." Id. (citing Colautti v. Franklin,

8  439 U.S. 379, 392-393, n. 10 (1979).

9  The regulations further explain that Bureau staff may impose sanctions, and that

10  the DHO is the staff member to impose sanctions. See 28 C.F.R. §§ 541.1; 541.8. The

11  regulations provide an extensive discussion regarding the disciplinary process before the

12  UDC and DHO and subsequent administrative appeals of any sanction imposed by the

13  DHO. However, the regulations do not mention procedures where a BOP staff member

14  can certify the decision to impose sanctions made by an employee of a privately run

15  institution. Respondent's contentions that the policy set forth in the BOP memorandum

16  are authorized fail to address the inconsistencies between the procedure set forth in the

17  memorandum and those required by the regulation. As Respondent has not addressed

18  basic issues such as interpretation of the language of the regulation, Respondent's

19  interpretation, while considered, is of little weight. Christopher 132 S. Ct. at 2169; Mead,

20  533 U.S. at 228.

21  c.  RCC Disciplinary Procedure and Other Relevant Caselaw

22  Respondent, in his last argument, asserts that the current policy of the BOP

23  complies with Petitioner's due process rights because matters involving inmate discipline

24  in Residential Re-entry Centers ("RRC") are subject to a similar protocol. Respondent

25  cites to several decisions where courts have upheld RRC decisions as satisfying due

26  process requirements. See Answer at 9-10 (citing Flores v. Thomas, No. 3:11-cv-355-

27  MA, 2012 WL 70575, at *3 (D. Or. Jan. 5, 2012); Dickerson v. Thomas, No. 11-cv-744-

28  MA, 2011 WL 3704264, at *4 (D. Or. Aug. 22, 2011); Stevens v. Thomas, No. 11-cv-790-

1    MA, 2011 WL 3563131, at *3 (D. Or. Aug. 10, 2011); Harris v. Norwood, No. CV 07-

2    2588-SGL, 2008 WL 5377647, at *1 (C.D. Cal. Dec. 16, 2008)). The Court does not find

3    the cases provided by Respondent to be persuasive. The cases, while finding that the

4    inmates' due process rights were observed, do not address the issue presented here,

5    i.e., whether the regulations authorize someone who is not an employee of the BOP to

6    impose sanctions on inmates.

7          In Flores v. Thomas, No. 3:11-cv-355-MA, 2012 WL 70575, at *3 (D. Or. Jan. 5,

8    2012), the inmate was transferred from an RRC to a federal prison where he was

9    disciplined. It does not appear that the petitioner was disciplined by a private employee,

10   nor does the petitioner present a claim on that ground.

11         In Dickerson v. Thomas and Stevens v. Thomas, the court denied the petitioners'

12   claims that due process required inmates have the opportunity to argue directly to the

13   DHO rather than the discipline committee at the contract facility at which he was housed.

14   The court rejected the argument based on both the BOP's policy statement allowing

15   discipline at contract facilities to be held before non-BOP staff if reviewed by a BOP staff

16   member and the fact the petitioners did not have a due process right under Wolff v.

17   McDonnell, 418 U.S. 539 (1974) to a hearing before the DHO. See Dickerson, 2011 WL

18   3704264, at *4 ("Wolff does not mandate that petitioner be granted two hearings, one

19   before the CDC and one before the DHO.") (citations omitted); Community Corrections

20   Manual, BOP Program Statement 7300.09, p. 18- 19. Neither rationale addresses the

21   issues presented here. Despite the fact that the regulations apply to such facilities, the

22   petitioners did not raise the argument, nor did the court mention the regulations in its

23   decision. 28 C.F.R. § 541.2. Whether due process under Wolff was satisfied is a

24   separate inquiry from whether the BOP followed its own regulations. See 1996

25   Freightliner FLD Tractor, 634 F.3d at 1116; Nat'l Ass'n of Home Builders v. Norton, 340

26   F.3d at 852. As Dickerson and Stevens did not address the questions raised here, their

27   holdings and rationale are not persuasive.

28         Finally, in Harris v. Norwood, 2008 U.S. Dist. LEXIS 105248 (C.D. Cal. 2008), the

court found no due process violation, but did not address issues regarding the authority to sanction the inmate or the interplay between the regulations and the BOP program statement authorizing discipline by employees at contract facilities. Nothing in the decision addresses, let alone questions, the issues raised here. The court provides the decision little weight.

In summary, while there are similar policy statements regarding the procedure of disciplining inmates at RCCs, the policies and cases upholding those decisions do not address the relevant regulation at issue here, i.e., that requiring a DHO, employed by the BOP, to be the party to impose sanctions on inmates. The decisions do not explain why the BOP would not be "bound by the regulations it imposes on itself." 1996 Freightliner FLD Tractor, 634 F.3d at 1116.

Other courts have addressed this issue, but have not addressed the concerns raised above based on the interpretation of the meaning of the regulations. In Sejour v. Sanders, 2012 U.S. Dist. LEXIS 52483 (C.D. Cal. Jan. 18, 2012), the court found that the DHO, an employee of a private prison, had the authority to discipline inmates. However, the analysis only addressed whether the statutory grant of authority by Congress authorized the conduct under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). The court failed to address the language of the regulations promulgated by the BOP and the limitations imposed by the regulations. Even if the statute would allow the conduct in question, the BOP is bound by the more limiting language of the regulations. See Morton v. Ruiz, 415 U.S.  at 235; Alcaraz v. INS, 384 F.3d at 1162. As Sejour did not address the language of the regulations, the Court does not find its reasoning persuasive.

In Hilario-Paulino v. Pugh, the Eleventh Circuit dealt with a similar argument in determining if the BOP violated the regulation set forth in 28 C.F.R. § 0.97 which allows the Director of the Bureau of Prisons to redelegate authority, functions or duties vested in him to employees of the Department of Justice. 194 Fed. Appx. 900 (11th Cir. Ga.

2006) (unpublished).[7] The court held that BOP's interpretation that the regulation was not violated because of the ability of BOP employees to review the disciplinary decision of a private employee was entitled to substantial deference. Id. at 903-04. Nothing in the Hilario-Paulino decision discusses the other regulations, including the rights of prisoners to appear and present their claims before a DHO employed by the BOP. That lack of discussion of other relevant regulations makes the reasoning of Hilario-Paulino non-persuasive here. The language of the regulations regarding re-delegation of authority under § 0.97, like the regulations authorizing discipline, are both limited by their plain language to "BOP employees". Furthermore, the process allowed by internal policy memos would contradict and negate the language of § 541.8 which allows an inmate to present his case to the person issuing the disciplinary decision.  As the decision does not thoroughly discuss the issues presented by redelgation of authority or by considering staff of private prisons staff of the BOP, the decision is not entitled to deference.[8] Christopher, 132 S. Ct. at 2169; see also Minneci v. Pollard, 132 S. Ct. 617, 623 (2012) (employment status of employees of a private prison rather than employees of the BOP makes "a critical difference" in Bivens actions.) .

The Court finds that the regulations require that an inmate have an opportunity to appear before a DHO employed by the BOP. See 28 C.F.R. §§ 500.1, 541.2, 541.8. Furthermore, the regulations only authorize the DHO to impose sanctions. Id. The subparts of the regulations, when read together, are unambiguous. Adopting Respondent's contrary interpretation would "permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." Chase Bank USA, N.A. v.

---

[7] While unpublished and not considered binding precedent, the case may be cited as persuasive authority. See 11th Cir. Rule 36-3.

[8] Likewise, the decisions of the lower courts which determined the redelegation was authorized without addressing contrary language in the regulations are not persuasive. See  Gallo v. Pugh, 2005 U.S. Dist. LEXIS 17589 (S.D. Ga. 2005); Rivera v. Pugh, 2005 U.S. Dist. LEXIS 41262 (S.D. Ga. 2005); Revelo v. Pugh, 2006 U.S. Dist. LEXIS 17792 (S.D. Ga. 2006); Diaz v. Pugh, 2006 U.S. Dist. LEXIS 66415 (S.D. Ga. 2006); Duy v. Fed. Bureau of Prisons, 2006 U.S. Dist. LEXIS 95405 (D.S.C. 2006);  Saleem v. Wells, 2010 U.S. Dist. LEXIS 85386 (S.D. Ga. 2010); Pena-Morfe v. Wells, 2010 U.S. Dist. LEXIS 86847, 17-18 (S.D. Ga. 2010).

1    McCoy, 131 S. Ct. 871, 882 (2011); Christensen, 529 U.S. at 588. Respondent's

2    alternative interpretation is "plainly erroneous or inconsistent" with the regulation and not

3    entitled to Auer deference. Id.

4            The regulations require the BOP to provide inmates with disciplinary hearings

5    before a DHO employed by the BOP.  The BOP is bound by the regulations it imposes

6    on itself, and it was not authorized to allow staff of a privately run prison to discipline

7    Petitioner. See United States v. 1996 Freightliner FLD Tractor, 634 F.3d at 1116. The

8    fact that the BOP issued a memorandum creating a disciplinary procedure different than

9    that authorized does not alleviate Respondent's responsibility to follow the regulations.

10   See Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 852 (9th Cir. 2003) ("Having

11   chosen to promulgate a regulation, the agency must follow that regulation.") As

12   Respondent's conduct was not authorized, Petitioner is entitled to habeas corpus relief.

13   **IV.   RESERVATION OF REMAINING CLAIM**

14           Petitioner is entitled to relief on his first claim. Accordingly, a determination of

15   Petitioner's second claim is unnecessary. In granting the petition on claim one, the Court

16   is necessarily finding that a rehearing is unnecessary. See e.g., Blazak v. Ricketts, 971

17   F.2d 1408, 1413 (9th Cir. 1992) (A district court order requiring the state to retry the

18   Petitioner was final because it "left nothing to be done but the execution of the

19   judgment," "disposed of all the conviction related claims," and "granted all the relief

20   requested."); Buckley v. Terhune, 266 F. Supp. 2d 1124, 1144 (C.D. Cal. 2002) (Further,

21   "[e]ven if petitioner prevailed on one or more of his other claims, he could obtain no

22   greater relief than that to which he already is entitled."). The Court therefore reserves

23   judgment on the remaining claim. Blazak, 971 F.2d at 1413 ("[W]hen habeas is granted

24   on a conviction issue rather than a sentencing issue, requiring the district court to

25   resolve at one time all the issues raised in the petition could actually delay the

26   proceedings unnecessarily and waste the district court's scarce judicial resources.").

27

28   **V.    RECOMMENDED RELIEF**

It is well established that federal district courts have broad discretion in conditioning a judgment granting habeas relief. Hilton v. Braunskill, 481 U.S. 770, 775 (1987). Pursuant to 28 U.S.C. § 2243, federal courts are authorized to dispose of habeas corpus matters "as law and justice require." "In modern practice, courts employ a conditional order of release in appropriate circumstances, which orders the [Government] to release the petitioner unless the [Government] takes some remedial action, such as to retry (or resentence) the petitioner." Harvest v. Castro, 531 F.3d 737, 741-742 (9th Cir. 2008) (citing Wilkinson v. Dotson, 544 U.S. 74, 89 (2005) (Kennedy, J., dissenting); Herrera v. Collins, 506 U.S. 390, 403 (1993); Hilton v. Braunskill, 481 U.S. at 775 ("[T]his Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court."); In re Bonner, 151 U.S. 242, 259-60 (1894)).

Accordingly the Court recommends that Petitioner's good credit time be reinstated within thirty days of the adoption of the instant Findings and Recommendation by the District Court Judge unless Respondent notifies the Court of the Government's intent to provide Petitioner a new disciplinary hearing within ninety days.

## VI.   CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that the Court find that Petitioner is entitled to relief with regard to the first claim of the Petition for Writ of Habeas Corpus and that Petitioner's good credit time be restored or Petitioner be granted a new disciplinary hearing.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1) and Local Rule 304. Within fourteen (14) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.

1   The parties are advised that failure to file objections within the specified time may

2   waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

3   Cir. 1991).

4

5

6   IT IS SO ORDERED.

7   Dated:   November 20, 2013          /s/ *Michael J. Seng*

8                                        UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28